MARCELYN M. FREZELL, APPELLANT, V. FRANK J. IWERSEN, M.D., APPELLEE.

436 N.W.2d 194

Filed March 3, 1989.   No. 87-460.

Joseph B. Muller and Ronald J. Palagi for appellant.

Robert M. Slovek and Thomas J. Shomaker, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., GRANT, and FAHRNBRUCH, JJ., and HENDRIX and OLBERDING, D. JJ.

OLBERDING, D.J.

Marcelyn M. Frezell filed this malpractice action against Dr. Frank J. Iwersen on January 14, 1986. She alleged negligent treatment during her back surgery performed February 2, 1981, and continuing through her hospitalization, ending March 10, 1981. Dr. Iwersen denied any negligence and raised the affirmative defense of the statute of limitations.

After a bench trial on the sole issue of the statute of limitations, the district court for Douglas County found: (1) The specific acts of negligence occurred on February 2, 1981; (2) the action was filed more than 2 years after the negligence occurred; (3) Frezell should have been aware of and should

reasonably have discovered the basis for her cause of action more than 1 year before the filing of her petition; and (4) the action was barred by the statute of limitations, Neb. Rev. Stat. §§ 25-222 (Reissue 1985) or 44-2828 (Reissue 1988). We affirm.

The assignments of error claim the trial court erred in failing to find the 2-year statute of limitations did not apply due to the following: (1) the discovery rule exception, (2) the continuous treatment exception, and (3) the estoppel exception.

## THE RECORD

In January of 1973, Frezell injured her back at work. Because her employment required heavy lifting, she continued to aggravate the injury.

On January 29, 1981, a myelogram indicated a degenerative lumbar disk. Dr. Iwersen performed a surgical procedure called a hemilaminectomy on Frezell on February 2, 1981, to partially remove the disk. During the surgery, severe bleeding occurred and the wound was packed with Surgicel. Two Surgicel packs were left in the wound to control postoperative bleeding. Dr. Iwersen, in his deposition, admitted he had not used Surgicel prior to the Frezell surgery, he had not read any literature on the use of Surgicel, and he had since learned Surgicel was contraindicated for this type of surgery.

After the surgery, Frezell lost bladder control and developed severe pain and weakness in her legs. A postoperative consultation report indicated her new problems were partially caused by the use of Surgicel.

A second surgery was performed on February 5, 1981. During this surgery, a complete laminectomy in the same region was performed, and the Surgicel packs were removed.

Dr. Iwersen made the following findings in his operative report, dated February 5, 1981:

> FINDINGS: There was evidence of compression of the cauda at the L4-L5 level due to Surgicel which had been placed in the wound for hemorrhage. This Surgicel was causing an actual tamponade of the cauda pressing the cord clear to the right side and nearly completely constricting it.

Dr. Iwersen treated Frezell for the pain, leg, and bladder problems through October 8, 1985. During that period, Frezell

was hospitalized at least 16 times, primarily to give her relief from the severe pain.

During 1982, Dr. Gernon Longo, a urologist, also treated Frezell for her bladder problems. He testified he had informed Frezell that her bladder problems were permanent.

Dr. Iwersen's records show "To Whom It May Concern" letters (letters to insurance companies) summarized as follows:

February 11, 1981: "She has a definite neurological deficit in both lower extremities" and "will have some residuals."

May 18, 1981: She has shown "some improvement," but "I am sure it will be a year from the time of her surgery before the patient will gain her maximum result."

November 24, 1981: "I do not feel too optimistic about much further return of function."

June 8, 1983: "In the last year, the patient has shown no progress in her treatment and in my opinion is 100 percent permanently and totally disabled."

August 19, 1983: "I do not feel that this patient will ever be able to return to work and have listed her as 100 percent totally disabled. The patient is willing to accept this at this time and realizes her problem."

Frezell contacted an attorney concerning a workers' compensation claim in 1981. He requested and received complete copies of Dr. Iwersen's records on November 2, 1981.

Frezell retained her current attorney in 1984 to assist her in obtaining Social Security disability benefits. He asked Dr. Iwersen for a letter describing the extent of her disability. Dr. Iwersen's letter, dated June 13, 1984, stated she was totally disabled. In 1984, her new attorney also requested and received complete copies of Dr. Iwersen's records.

Frezell contends that from February 1981 to June of 1985, Dr. Iwersen told her she would fully regain the use of her legs and control of her bladder, but that her recovery would take 5 years. Because of these statements, she felt she was only temporarily totally disabled, and she did not learn her condition was permanent until June 1985, during her hospitalization at the University of Nebraska Medical Center pain clinic.

## STANDARD OF REVIEW

In reviewing the district court's judgment on the issue of the statute of limitations, the findings and decision of the district court will not be set aside unless clearly wrong. *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). The point in time when the statute of limitations begins to run is determined by the facts of the individual case. *Hutmacher v. City of Mead*, 230 Neb. 78, 430 N.W.2d 276 (1988).

## STATUTE OF LIMITATIONS

This case is controlled by the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 et seq. (Reissues 1984 & 1988). The act provides:

> [A]ny action to recover damages based on alleged malpractice . . . shall be commenced within two years next after the alleged act or omission . . . except that if the cause of action is not discovered and could not be reasonably discovered within such two-year period, the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

§ 44-2828 (Reissue 1988).

The undisputed record shows that the alleged act or omission occurred on February 2, 1981. Frezell's petition was filed January 14, 1986. The petition is barred by the 2-year statute of limitations unless one of her argued exceptions applies.

## DISCOVERY EXCEPTION

A cause of action accrues when the plaintiff discovers, or through reasonable diligence should have discovered, the act of malpractice or the resulting injury. *Taylor v. Karrer*, 196 Neb. 581, 244 N.W.2d 201 (1976); *Toman v. Creighton Memorial St. Josephs Hosp., Inc.*, 191 Neb. 751, 217 N.W.2d 484 (1974).

In *Toman*, this court held:

> The presence of an unexpected result after surgery should not be tantamount to discovery of the negligent act and the resultant injury, where the surgeon himself repeatedly reassures the patient that she is improving and recovering from the unexpected result, prescribes a course of therapy outside the office to aid in recovery, keeps the patient

returning, and fails during the post-operative period to either determine or advise the patient that the unexpected result (weakness of the left arm) is a permanent condition from which she will not recover.

*Id.* at 758-59, 217 N.W.2d at 489.

There was evidence before the trial court that Dr. Iwersen assured Frezell she would *not* recover from the complications of the surgery and that her condition was permanent. She admitted that Dr. Iwersen told her the complications related to the surgery and that the cause of the complications was the hemorrhage, which had been controlled with packing. In fact, Dr. Iwersen's records show he wrote letters to insurance companies and her present attorney stating that she was totally disabled. Dr. Longo, not a party to this action, also testified he told Frezell that her bladder condition was permanent. In addition, she was hospitalized on at least 16 different occasions for treatment of the pain and complications resulting from the original surgery. In view of this evidence, she should have reasonably discovered the basis for her cause of action more than 1 year before the filing of her petition, as found by the trial court.

## CONTINUOUS TREATMENT EXCEPTION

Dr. Iwersen continued to treat Frezell for the residual effects of the cauda equina syndrome. Frezell contends this subsequent treatment constitutes continuous treatment within the exception first announced in *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941).

Frezell argues that Dr. Iwersen continued to treat her for the complications of the February 2, 1981, surgery up to and including June 24, 1985. This fact was not disputed by Dr. Iwersen.

The continuous treatment doctrine applies when there has been either a misdiagnosis upon which incorrect treatment is given or when there has been a continuing course of negligent treatment. It does not apply where there have been only isolated acts of negligence. *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985); *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983); *Williams v. Elias, supra.*

Frezell does not allege the treatment after the surgery was

negligent, nor does she allege the original diagnosis (cauda equina syndrome) was wrong. The trial court found that the specific acts of negligence occurred on February 2, 1981. The amended petition and record support only an isolated act of negligence, which precludes the application of the continuous treatment exception.

## ESTOPPEL EXCEPTION

Frezell alleges that Dr. Iwersen is estopped from relying on the statute of limitations due to his misrepresentations to her. The facts alleged to have been misrepresented are permanency of the complications, length of recovery period, and improper use of Surgicel.

One who conceals material facts, which delays the filing of suit, cannot avail himself of the statute of limitations defense. *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988).

The record does not support a finding that Dr. Iwersen concealed any material fact from Frezell. Even his postoperative report after the second surgery shows that Surgicel may have been a contributing factor. His candor with Frezell is shown by the record references to permanency of the complications, letters as to total disability, and two complete copies of his records being given to her attorneys.

After a review of the above record, we cannot say that the findings and decision of the district court were clearly wrong.

AFFIRMED.