DIXIE R. HAMPTON, FORMERLY KNOWN AS DIXIE R. GRASMICK, APPELLANT, V. BYERS SHAW, JR., M.D., ET AL., APPELLEES.

710 N.W.2d 341

Filed February 21, 2006.   No. A-04-819.

John P. Weis for appellant.

Thomas J. Shomaker, of Sodoro, Daly & Sodoro, P.C., for appellee Byers Shaw, Jr.

David L. Welch and Donald J. Kleine, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellees Jean Botha and Wendy Grant.

SIEVERS, CARLSON, and MOORE, Judges.

SIEVERS, Judge.

## INTRODUCTION

Dixie R. Hampton, formerly known as Dixie R. Grasmick, sued Drs. Byers Shaw, Jr., Jean Botha, and Wendy Grant (hereinafter collectively the defendant doctors), claiming surgical error. Hampton now appeals the order of the Douglas County District Court dismissing her complaint with prejudice because the complaint was filed beyond the 2-year statute of limitations and because there was no exception, specifically the continuing treatment doctrine, which tolled the limitations period. We find that the continuing treatment doctrine does not operate to toll the statute of limitations because the removal of the surgical staples, which allegedly extends the statute of limitations, even if deemed "treatment," was not performed by the defendant doctors.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2004, Hampton filed a complaint in the Douglas County District Court alleging professional malpractice against the defendant doctors. The defendant doctors filed an answer and moved to dismiss the complaint because Hampton had not complied with the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. § 44-2801 et seq. (Reissue 2004). Hampton moved to file an amended complaint, and the court granted such motion and overruled the motion to dismiss. Hampton filed an amended complaint, which for simplicity we will refer to as the "complaint." Hampton alleged in the complaint that the defendant doctors were physician health care providers defined by, qualified according to, and subject to the provisions of the Nebraska Hospital-Medical Liability Act. Hampton alleged that she was referred to Shaw in December 2001 for examination and possible

care and treatment for a hemangioma located on the right lobe of her liver. A hemangioma is a benign tumor of dilated blood vessels. See Dorland's Illustrated Medical Dictionary 740-41 (28th ed. 1994).

The complaint alleged that on or about February 15, 2002, Hampton underwent "a partial hepatic resection-posterior segment, right lobe surgical procedure," and that the defendant doctors jointly participated in such procedure. As a result of the February 15 surgery, Hampton's spleen was damaged and removed, and she was left with "an extensive, disfiguring scar" across her abdomen. Hampton was discharged from the hospital on February 20. The complaint alleged that none of the defendant doctors had informed her that the removal of her spleen or the disfiguring scar was a potential risk of the surgery.

Hampton alleged in her complaint that upon discharge, she was released to the care of her local physician, and that on February 25, 2002, she saw her local physician for the removal of the staples used in the February 15 surgical procedure and to begin followup care and treatment. Her local physician is not named as a defendant in this claim and was not alleged to be negligent when removing the staples. Hampton's complaint stated that after she was released from the followup care of her local physician, she became aware of the defendant doctors' breach of the standard of care.

The complaint asserted that the defendant doctors' failure both to fully inform Hampton of the inherent and known risks of the surgical procedure and to obtain informed consent were breaches of the standard of care. Hampton also alleged that had the defendant doctors followed the accepted standard of medical care or practice, a patient undergoing a partial hepatic resection-posterior segment, right lobe surgical procedure would not have sustained an injury to the spleen necessitating the removal of the spleen and would not have incurred "an extensive, disfiguring scar" across the abdomen. Hampton also alleged that she sustained damages as a result of the breach of duty by the defendant doctors.

The defendant doctors moved the district court to dismiss the complaint pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) because the complaint failed to state a cause

of action and because the action was barred by the statute of limitations, see § 44-2828. Following a hearing on the motion to dismiss, the trial court granted the motion as to the defendant doctors, reasoning that the applicable statute of limitations is 2 years, which began to run on February 15, 2002. The court found that because the continuing treatment doctrine did not apply, Hampton's February 25, 2004, complaint was filed out of time. The trial court dismissed the complaint with prejudice. Hampton timely appeals to this court.

## ASSIGNMENTS OF ERROR

Hampton asserts that the trial court erred in (1) dismissing her amended complaint with prejudice and (2) failing to allow her to amend her pleadings further.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss for failure to state a claim under rule 12(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief. *Rohde v. Knoepfel*, 13 Neb. App. 383, 693 N.W.2d 564 (2005). When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Id.*

## ANALYSIS

Hampton's complaint was filed pursuant to the rules for notice pleading. See, Neb. Rev. Stat. § 25-801.01 (Cum. Supp. 2004); Neb. Ct. R. of Pldg. in Civ. Actions (rev. 2003). And, this case is controlled by the Nebraska Hospital-Medical Liability Act. The Nebraska Hospital-Medical Liability Act provides, in relevant part, a 2-year statute of limitations for medical malpractice claims unless the cause of action could not have been reasonably discovered within the 2 years, and then the action may be brought within 1 year from the date of discovery. See § 44-2828.

Accepting the allegations in the complaint as true, Hampton's surgery was performed on February 15, 2002, and her complaint was filed on February 25, 2004. Thus, her complaint is barred by the 2-year statute of limitations unless a tolling exception applies, which exception Hampton argues is the continuous treatment doctrine.

The Nebraska Supreme Court in *Frezell v. Iwersen*, 231 Neb. 365, 369, 436 N.W.2d 194, 198 (1989), stated: "The continuous treatment doctrine applies when there has been either a misdiagnosis upon which incorrect treatment is given or when there has been a continuing course of negligent treatment. It does not apply where there have been only isolated acts of negligence."

In *Frezell v. Iwersen, supra*, Dr. Frank Iwersen performed surgery on Marcelyn Frezell on February 2, 1981, to partially remove a degenerative lumbar disk. During the surgery, Iwersen packed the wound with Surgicel and then left the Surgicel in the wound to control postoperative bleeding. After the surgery, Frezell lost bladder control and developed severe pain and weakness in her legs which, according to a postoperative consultation report, was partially caused by the Surgicel. Another surgery was performed on February 5, 1981, to remove the Surgicel. Iwersen treated Frezell for the postoperative complications until October 8, 1985. Frezell did not discover her condition was permanent until June 1985.

The Nebraska Supreme Court found that the action was barred by the 2-year statute of limitations. However, the court also considered whether the continuous treatment doctrine applied, tolling the statute of limitations. Iwersen did not dispute that he treated Frezell until June 24, 1985, for the complications that followed the February 2, 1981, surgery. However, the *Frezell* court found "Frezell d[id] not allege [that] the treatment after the surgery was negligent" or that the original diagnosis was wrong, and the trial court found the specific acts of negligence occurred on February 2. *Id.* at 369-70, 436 N.W.2d at 198. Thus, the Supreme Court held, "The amended petition and record support only an isolated act of negligence, which precludes the application of the continuous treatment exception." *Id.* at 370, 436 N.W.2d at 198. See, also, *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985) (failure to allege that continuous

treatment received was negligent prevented plaintiff from relying on continuous treatment doctrine to toll statute of limitations, and claim was dismissed on summary judgment; statute of limitations begins to run at end of isolated acts of negligence).

In the instant case, Hampton's surgery was performed on February 15, 2002, and she was discharged from the hospital on February 20. Hampton argues that she received continuous treatment until February 25, when the staples were removed by her local physician, who is not named as a defendant, rather than by the defendant doctors who performed the surgery. Hampton, similar to the plaintiff in *Frezell v. Iwersen, supra*, did not allege in her complaint that the removal of the staples was negligent or that there was a misdiagnosis upon which incorrect treatment was given. Nor did Hampton allege any course of continuous treatment which would toll the statute of limitations under *Frezell v. Iwersen, supra*. But, we must be mindful that *Frezell* was a code pleading case and that the instant matter is a notice pleading case which was dismissed pursuant to a rule 12(b)(6) motion. Consequently, a new and unique situation is presented.

We have said that a complaint filed under notice pleading will not be dismissed under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief. *Rohde v. Knoepfel*, 13 Neb. App. 383, 693 N.W.2d 564 (2005). Thus, the question is whether there is any set of facts that Hampton can prove which would make the continuing treatment doctrine applicable so as to toll the statute of limitations.

Therefore, the first question becomes whether the removal of the staples constitutes "continuing treatment" for purposes of the doctrine. But, it seems that by definition, the removal of the staples on February 25, 2002, cannot be continuous treatment because it was done by Hampton's local physician and not by the defendant doctors. In short, the admissions in Hampton's complaint show that the defendant doctors did not continue to treat her after her discharge from the hospital on February 20. If removal of the staples is not "continuing treatment," then the statute of limitations is not tolled.

Examination of the purpose of the continuing treatment doctrine, as comprehensively detailed in the Nebraska Supreme

Court's opinion in *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001), is helpful to demonstrate that such doctrine is inapplicable in the present case. The *Casey* court stated:

> "[I]t is just to the physician and surgeon that he [or she] may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and treatment necessary and to correct the ordinary and usual mistakes incident to even skilled surgery. The [continuing treatment doctrine] is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein malpractice, the statute of limitations should begin to run when the treatment ceased." *Williams v. Elias*, 140 Neb. 656, 662-63, 1 N.W.2d 121, 124 (1941).

It is apparent that allowing a physician an opportunity to correct any malpractice and not disrupting the physician-patient relationship are the primary considerations underlying the continuing treatment doctrine in Nebraska. *Id.* See, also, *McDermott v. Torre*, 56 N.Y.2d 399, 408, 437 N.E.2d 1108, 1112, 452 N.Y.S.2d 351, 355 (1982) ("the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure [and] implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so"). It is the trust relationship that may make discovery of a claim difficult. See *Miller v. United States*, 458 F. Supp. 363, 366 (D. Puerto Rico 1978) ("[t]he rationale for the [continuing treatment doctrine] is the protection of the confidential physician-patient relationship . . . as well as the fear that the treating physician, 'knowing of his actionable mistake, might be able to conceal it from his patient or continuously to lull the patient into failing to institute suit within the ordinarily permissible time period' ").

261 Neb. at 8, 621 N.W.2d at 487-88.

■ In *Casey v. Levine, supra,* the Nebraska Supreme Court held that a claim for malpractice against a hospital based upon the negligence of its nursing staff accrues when the patient is discharged from the hospital and that the continuing treatment doctrine does not toll the statute of limitations for subsequent admissions to the hospital authorized by the patient's affiliated but independent physician. In reaching this conclusion, the Nebraska Supreme Court began with the premise that to toll the statute of limitations against a hospital, most courts require that there be an ongoing physician-patient relationship for the continuing treatment doctrine to apply. The *Casey* court then cited a number of cases from other jurisdictions. Of particular interest for the instant case is the reference in *Casey* to *Wheeler v. Schmid Laboratories, Inc.,* 451 N.W.2d 133 (N.D. 1990), which case the Nebraska Supreme Court noted as declining to adopt the continuing treatment doctrine where, after surgery, the defendant physician had only written a prescription for the patient and had not examined her because " '[t]he continuing treatment concept is premised upon an ongoing and continuous relationship between patient and physician.' " *Casey v. Levine,* 261 Neb. 1, 10, 621 N.W.2d 482, 489 (2001), quoting *Wheeler v. Schmid Laboratories, Inc., supra.*

Returning to the policy considerations for the continuing treatment doctrine as described by the Nebraska Supreme Court in *Williams v. Elias,* 140 Neb. 656, 1 N.W.2d 121 (1941), and discussed above, there were no "evils" in the instant case that the defendant doctors needed an opportunity to correct after Hampton's surgery on February 15, 2002—her spleen had been removed, and it obviously was not going to be replaced. See *Healy v. Langdon,* 245 Neb. 1, 4-5, 511 N.W.2d 498, 501 (1994), quoting *Williams v. Elias, supra* (" 'physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and [subsequent] treatment necessary and to correct the ordinary and usual mistakes incident to even skilled surgery' "). Hampton's spleen was damaged during the hemangioma surgery and was therefore removed. Further treatment for the removal of the spleen did not occur, as evidenced by Hampton's discharge and release from the defendant doctors' care on February 20, 2002.

Moreover, Hampton admitted in her complaint that "[a]*s a result of the February 15, 2002 surgery* mentioned above, [her] spleen was damaged and removed and [she] was left with an extensive, disfiguring scar across her abdomen." (Emphasis supplied.) Thus, in the complaint, Hampton admitted that the removal of the spleen during the hemangioma surgery was an isolated act by the defendant doctors which was completed on February 15. The alleged "treatment"—assuming it can be properly characterized as such—by the local physician when the staples were removed was not continuing treatment by the defendant doctors to attempt to remedy their alleged surgical mistake. See *Frezell v. Iwersen*, 231 Neb. 365, 436 N.W.2d 194 (1989) (continuing treatment doctrine does not apply when there have been only isolated acts of negligence). We note that Hampton alleged a failure to warn of the dangers of the spleen's removal and of extensive scarring resulting therefrom as part of the risk of her hemangioma surgery. However, such alleged failure was obviously an isolated action, or inaction, which occurred before the surgery, and as such, the continuous treatment doctrine would have no application.

## CONCLUSION

We conclude that there is no set of facts that Hampton can prove which would demonstrate that the continuing treatment doctrine is applicable to the removal of the surgical staples on February 25, 2002, so as to toll the running of the statute of limitations. The complaint alleged the occurrence of an isolated act of surgical negligence as well as a failure to warn, plus it admitted facts showing that Hampton's physician-patient relationship with the defendant doctors ended with her discharge on February 20, 2002. Finally, to the extent that the removal of the staples could be considered "treatment," it was not treatment by the defendant doctors, a fundamental predicate for the application of the continuing treatment doctrine. Thus, Hampton's complaint filed on February 25, 2004, is barred by the 2-year statute of limitations. The district court did not err in dismissing her amended complaint.

Hampton's second assignment of error asserts that the trial court erred in failing to allow her to amend her amended complaint. Because we find that no facts could be proved which

would avoid the bar of the statute of limitations, amending the complaint would have been futile. Therefore, the district court did not err in dismissing the claim without granting Hampton another opportunity to amend her complaint.

AFFIRMED.