Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/01/2022 08:09 AM CST

- 520 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

Velma Weyers and Gilbert Weyers, appellants,
v. Community Memorial Hospital, Inc.,
doing business as Syracuse Area
Health et al., appellee.

___ N.W.2d ___

Filed January 25, 2022.    No. A-21-132.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. **Partnerships: Proof.** The objective indicia of co-ownership are commonly considered to be (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property. The five indicia of co-ownership are only that—they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership.

3. **Joint Ventures: Partnerships: Contribution.** A joint venture or enterprise is in the nature of a partnership and exists when two or more persons contribute cash, labor, or property to a common fund with the intention of entering into some business or transaction for the purpose of making a profit to be shared in proportion to the respective contributions.

4. **Joint Ventures.** Each of the parties in a joint venture or enterprise must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other.

5. **Political Subdivisions Tort Claims Act: Jurisdiction.** While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Political Subdivisions Tort Claims Act.

6. **Health Care Providers: Claims: Political Subdivisions Tort Claims Act.** The operation of the Nebraska Hospital-Medical Liability Act

- 521 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

does not excuse compliance with the requirement under the Political Subdivisions Tort Claims Act that a claim be presented to the political subdivision prior to filing suit.

7. **Political Subdivisions Tort Claims Act: Limitations of Actions.** For purposes of Neb. Rev. Stat. § 13-919(1) (Reissue 2012), a cause of action accrues, thereby starting the period of limitations, when a potential plaintiff discovers, or in the exercise of reasonable diligence should discover, the political subdivision's negligence.

8. **Equity: Estoppel.** The doctrine of equitable estoppel rests largely on the facts and circumstances of the particular case.

9. ____: ____. The doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand. In such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice.

10. **Equity: Estoppel: Pleadings: Appeal and Error.** Equitable estoppel is an affirmative defense and must be raised in the pleadings to be considered by a trial court and on appeal.

11. **Appeal and Error.** In general, appellate courts do not consider arguments and theories raised for the first time on appeal. Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

12. **Courts: Appeal and Error.** The Nebraska Court of Appeals does not have authority to reverse the holdings of the Nebraska Supreme Court.

13. **Malpractice: Limitations of Actions.** Under the occurrence rule, a professional malpractice action accrues and the statute of limitations begins to run when the allegedly wrongful act or omission occurs.

14. ____: ____. Under the continuing treatment exception to the occurrence rule, the statute of limitations does not begin to run until the act complained of, and any resulting subsequent treatment therefor, is completed.

15. **Negligence: Malpractice: Limitations of Actions.** The continuous treatment doctrine applies either when there has been a misdiagnosis upon which incorrect treatment is given or when there has been a continuing course of negligent treatment. It does not apply where there have been only isolated acts of negligence.

Appeal from the District Court for Otoe County: VICKY L. JOHNSON, Judge. Affirmed.

Christopher S. Bartling, of Bartling & Hinkle, P.C., for appellants.

- 522 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

Robert A. Mooney and Emily E. Palmiscno, of Sodoro, Mooney & Lenaghan, L.L.C., for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

The district court for Otoe County granted the motion for summary judgment of Community Memorial Hospital, Inc. (CMH, Inc.); Velma Weyers and Gilbert Weyers (collectively appellants) appeal from that order. For the reasons that follow, we affirm.

## BACKGROUND

In February 2018, Velma underwent knee surgery at CMH, Inc., in Syracuse, Nebraska. The day after surgery, while Velma was recovering at the hospital, she fell from a hospital bed while under sedation and was injured. In December 2019, appellants filed a complaint against "[CMH, Inc.,] doing business as Syracuse Area Health, Community Memorial Hospital, and Community Memorial Hospital District." The complaint alleged that Velma was entitled to compensation under theories of negligence and res ipsa loquitur, and Gilbert raised a related loss of consortium claim. The complaint also waived the right to a medical review panel "to the extent that any Defendant is registered and is qualified under the Nebraska Hospital-Medical Liability Act" (NHMLA), see Neb. Rev. Stat. § 44-2801 et seq. (Reissue 2021).

In January 2020, CMH, Inc., filed a motion to dismiss or, in the alternative, a motion for summary judgment. Summarized, the motion alleged that the complaint identified the wrong defendant, as CMH, Inc., which is a private nonprofit corporation created to service the debt of the separate legal entity, Community Memorial Hospital District (CMHD). The motion alleged that CMH, Inc., "does not do business as Syracuse Area Health, Community Memorial Hospital, or [CMHD]." According to the motion, CMHD was the proper defendant,

- 523 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

as it was the entity that employed health care providers and entered into a physician-patient relationship with Velma.

The district court convened for a hearing on the motion in March 2020. Appellants moved for a continuance to conduct further discovery, which was granted. The court reconvened in June 2020, at which time appellants again moved for a continuance to conduct further discovery, which motion was also granted. CMH, Inc., objected to the request, noting, "This is a political subdivision tort claim and the political subdivision was not properly served with a claim . . . ." Appellants sent interrogatories, conducted depositions, and collected documentation regarding the legal relationship between the named defendant, CMH, Inc., and the nonparty, CMHD.

The record shows that CMHD is a "community hospital" created pursuant to Neb. Rev. Stat. § 23-3547 (Reissue 2012) and is a political subdivision of the State of Nebraska. CMHD was created by resolution of the Otoe County Board of Commissioners in January 1973, following the results of a special election in June 1972. Prior to November 2018, CMHD operated "Community Memorial Hospital," which was the hospital where Velma sustained her injury. CMHD opened a new hospital in November 2018 which operates as "Syracuse Area Health."

CMH, Inc., filed articles of incorporation with the Nebraska Secretary of State in August 1992, identifying the nature of its business as "Medical Care Facility Leasing." Article III of the 1992 articles provides the following:

> The exclusive purpose for which the corporation is organized is to provide for, erect, own, lease, furnish, equip and manage lands, grounds, and buildings located in and for the exclusive possession, use, and benefit of Community Memorial Hospital District, a body politic and corporate of the County of Otoe in the State of Nebraska.

Article V provides that CMH, Inc., "shall have no members" and "shall be managed by the Board of Directors." Article VI

- 524 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

provides that "[a]fter payment of all outstanding liabilities and obligations of the corporation other than obligations to [CMHD], the corporation shall donate and give to [CMHD] the assets which the corporation then possesses."

CMH, Inc., restated its corporate bylaws in August 2015, stating its purpose "to act on behalf of and for the benefit of [CMHD]." The 2015 bylaws reiterated that CMH, Inc., "shall be managed by its Board of Directors" but added the following provision:

> [T]he Board of Directors shall not take the following action(s) without obtaining the prior approval of the [CMHD] Board of Directors:
>
> a. Sell all or substantially all of [CMH, Inc.'s] assets.
>
> b. Enter into any financing or loan agreement encumbering [CMH, Inc.'s] assets.
>
> c. Enter into any affiliation agreement or other arrangement with another hospital entity.
>
> d. Amend these Restated Bylaws.

Under the 2015 bylaws, "a Director may be removed with or without cause by vote of the [CMHD] Board of Directors." Further, "[n]o Director shall receive compensation for his or her service as a Director." The articles also provide for various officers and respective duties, adding that "[CMHD] employees and other individuals may assist [CMH, Inc.'s] officers in the performance of their duties hereunder as may be from time to time requested."

The president and chief executive officer of CMHD, Michael Harvey, identified CMH, Inc., as a "debt-servicing corporation" which services CMHD's debts. Harvey explained that as a political subdivision, CMHD cannot obtain a bank loan and instead would need voter approval to issue bonds if it wanted to take on substantial debt. However, CMH, Inc., as a private corporation, is able to obtain private financing without voter approval. Harvey explained that once CMH, Inc., obtained funding and purchased property, it was necessary for CMH, Inc., to retain ownership as "collateral for the loan."

- 525 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

The record contains two lease agreements between CMH, Inc., and CMHD. Under the first lease agreement and supplemental lease agreement, executed in 1992, CMH, Inc., leased property to CMHD for the operation of Community Memorial Hospital in exchange for a monthly rent payment of $12,100. The agreement further provided that the base rent could be increased "[i]n the event Basic Rent is not sufficient in amount" to cover payments on the outstanding loan obligations. The lease was to "continue until the payment in full of all principal and interest on the Notes and any indebtedness or obligations . . . issued to refund the Notes." The term "'Notes'" was defined as CMH, Inc.'s "Construction Notes, Series 1992, in the initial amount of $950,000 issued pursuant to the Trust Agreement." The term "'Trust Agreement'" was defined as "the Trust Agreement between [CMH, Inc.,] and [National Bank of Commerce Trust and Savings Association] dated September 1, 1992, pursuant to which the Notes were issued."

Under the second lease, executed in 2016, CMH, Inc., once again leased property to CMHD in exchange for a "contribution," which was defined as "the amounts, however characterized, as are contributed by [CMHD] to [CMH, Inc.,] from time to time and used by [CMH, Inc.,] to acquire some or all of the Real Estate and/or the Project." The "project" was defined as "the construction of a replacement hospital facility in Syracuse, Nebraska." The agreement further provides that "[CMHD] agrees to make additional rental payments . . . in an amount equal to the aggregate principal amount of the Obligations and . . . an amount equal to interest on the Obligations." The term "obligations" was defined as "any evidence of indebtedness incurred by [CMH, Inc.,] for purposes of financing or refinancing the Hospital, which is expected to consist of (but shall not be limited to) interim construction and permanent financing to be provided through one or more loans from USDA." The term "hospital" was defined as "the Real Estate, Improvements, and Personal Property currently existing on the property or to be constructed in the future by

- 526 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

either [CMH, Inc.,] or [CMHD].” The 2016 lease also contains a provision granting CMHD an option to purchase the hospital property for $1 provided that no debt obligations remain outstanding.

Corroborating the terms of the lease agreements, Harvey testified that the rent payments CMHD paid to CMH, Inc., were determined by the amount of the loan payments CMH, Inc., was making on CMHD’s behalf. Harvey further testified that CMHD was responsible for “[a]ll operational expenses of the hospital and clinics” and that CMH, Inc., did not have any control over the business of “seeing and treating patients in exchange for a fee.” In his affidavit, Harvey attested that “[a]t all times material to the allegations of the Complaint, [CMH, Inc.,] did not employ any healthcare physicians, nurses, or staff [and] [n]o healthcare provider-patient relationship existed between [CMH, Inc.,] and patients of [CMHD], including [Velma].”

The court reconvened in August 2020, electing to consider the evidence and treat CMH, Inc.’s motion as a motion for summary judgment. In January 2021, the court entered an order granting CMH, Inc.’s motion for summary judgment. The court observed that CMHD, and not CMH, Inc., was doing business as Community Memorial Hospital when Velma was injured. The court found that CMH, Inc., “is not a hospital or licensed healthcare facility . . . did not employ any medical personnel and did not provide medical care to [Velma].” Thus, the court found, CMH, Inc., “cannot be sued for negligence or loss of consortium” because CMH, Inc., “owed no duty to [Velma].”

The court went on to note that a plaintiff is generally allowed to amend a lawsuit to add a new defendant, “unless it would be futile,” citing *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007). The court found that granting leave to amend the complaint in this case would be futile because appellants failed to comply with the requirements of the Political Subdivisions Tort Claims Act (PSTCA),

- 527 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012 & Cum. Supp. 2020). Specifically, appellants failed to serve CMHD with written notice of their claims within 1 year of accrual. Rather, appellants filed their lawsuit in December 2019, "almost ten months after the deadline" to serve CMHD with notice of their claims. Accordingly, the court granted CMH, Inc.'s motion for summary judgment and dismissed the complaint with prejudice. Appellants now appeal.

## ASSIGNMENT OF ERROR

Appellants assign, restated, that the district court erred in granting summary judgment.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015).

## ANALYSIS

It is undisputed that CMHD is a political subdivision of the State of Nebraska, subject to the PSTCA. Appellants do not argue that they complied with the requirements of the PSTCA. Rather, appellants raise a number of arguments in an effort to save the lawsuit despite the apparent defect under the PSTCA.

In their first three arguments, appellants generally assert that it was proper to name CMH, Inc., as the sole defendant. First, appellants argue CMH, Inc., owed Velma a duty of care on the grounds that "[b]oth [CMH, Inc.,] and [CMHD] were responsible for management of Community Memorial Hospital [and that CMH, Inc.,] was responsible for oversight of the hospital and responsible for the hospital activities in order to ensure the hospital could pay its bills and continue to profit." Brief for appellants at 16. In support of this argument,

- 528 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

appellants correctly point out that "[t]he hospital had a duty to furnish [Velma] with a properly functioning hospital bed and equipment, and . . . to select and review the competency of the employees, agents and staff members providing [Velma's] care." *Id*. Appellants continue, "[Velma] received negligent treatment in the hospital, and therefore the hospital breached its duty of care to [Velma]." *Id*.

We agree that if Velma suffered from negligent treatment, then "the hospital" would have breached its duty of care. However, we disagree that naming CMH, Inc., as the sole defendant was adequate to prosecute claims of negligence against "the hospital." Rather, the record demonstrates that CMH, Inc., is not a medical facility and does not employ any medical providers. CMH, Inc., is a private nonprofit corporation created for the express purpose to service privately held debts incurred on behalf of CMHD for the construction and improvement of its hospitals. We acknowledge that CMH, Inc., is the legal owner of property and equipment which it leased to CMHD for operation of Community Memorial Hospital. However, at the time of Velma's injury, CMHD maintained exclusive possession and control over the hospital premises. Furthermore, CMHD was exclusively responsible for employing medical providers and managing the provision of medical care at the hospital.

[2] Appellants next argue that CMH, Inc., and CMHD operated the hospital as a partnership. Under Neb. Rev. Stat. § 67-410(1) (Reissue 2018), a partnership is formed by "the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership." The objective indicia of co-ownership are commonly considered to be (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property. *In re Dissolution & Winding Up of KeyTronics*, 274 Neb. 936, 744 N.W.2d 425 (2008). The five indicia of co-ownership are only that—they are not all necessary to establish a partnership relationship, and no single indicium

- 529 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

of co-ownership is either necessary or sufficient to prove co-ownership. *Id.*

With regard to profit sharing, appellants point out that CMHD "receives the revenue from patient services and hospital business" but that CMHD "transfers the profits to [CMH, Inc.,] in order to pay hospital debt and expenses." Brief for appellants at 17. However, the record demonstrates that rental payments from CMHD to CMH, Inc., were intended to cover solely the expenses incurred by CMH, Inc., in servicing CMHD's debts. CMH, Inc., is a nonprofit corporation without any employees and whose directors are prohibited from accepting compensation. CMH, Inc., and CMHD did not carry on as co-owners of a business for profit; rather, their relationship was more akin to that of creditor and debtor (or landlord and tenant). Under these circumstances, the evidence does not support a finding of partnership status.

With regard to control sharing, appellants argue that CMH, Inc., and CMHD "share control by way of joint board meetings to make the policy and procedural decisions for the hospital, and the lease . . . requires [CMHD] to follow the operating and employment procedures as may be adopted by [CMH, Inc.]" *Id.* It is true that CMH, Inc., and CMHD held a number of joint board meetings beginning in January 2018 and do continue to meet on an annual basis. However, Harvey explained that "[w]ith [CMH, Inc.,] being the landlord . . . it was just easiest for the [CMH, Inc.,] board to get feedback from [CMHD] by having joint board meetings about the design and construction process." Harvey further testified that the CMH, Inc., board would adjourn after business related to the construction and design was finished, leaving only the CMHD board to address other matters of hospital business.

It is also true that the 1992 lease agreement includes a provision which reads as follows:

> It is expressly understood that [CMHD] shall manage and operate the facilities as a hospital and abide by all the rules and regulations set forth under the laws of the

- 530 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

State of Nebraska and the United States of America, and
such operating and employment procedures as may be
adopted by [CMH, Inc.,] from time to time.

However, there is no evidence that such "operating and
employment procedures" have ever been proposed or adopted
by CMH, Inc., and there is no similar provision in the updated
2016 lease. Nevertheless, the record otherwise makes clear that
CMH, Inc., and its board of directors are subject to control
and oversight by CMHD and that CMHD exercises exclusive
control over day-to-day hospital operations and the provision
of care. Again, under these circumstances, the evidence does
not support a finding of partnership status between CMH, Inc.,
and CMHD.

With regard to loss sharing, appellants argue that CMH, Inc.,
"holds all hospital debt, and so would be obligated to its lender
in event of any losses," such that "[l]osses of revenue would
decrease the amount of income received by [CMH, Inc.]" Brief
for appellants at 17. However, the record demonstrates that the
amount of payments received by CMH, Inc., is linked to the
outstanding obligations on debt held by CMH, Inc., and not
to CMHD's revenue in any given month. Moreover, both the
1992 and 2016 leases contain robust indemnification provi-
sions under which CMHD agreed to indemnify and save CMH,
Inc., harmless from and against all losses and liabilities, to the
extent permitted by law. Under these circumstances, as stated
above, the evidence does not support the argument that CMH,
Inc., and CMHD engaged in loss sharing evidencing partner-
ship status.

With regard to contribution, appellants argue that CMH,
Inc., "contributes the property and physical assets, along with
decision making by its board of directors and officers; [CMHD]
contributes its board of directors and officers to help manage
hospital operations." Brief for appellants at 17. However, the
record demonstrates that CMHD's board of directors does
much more than "help manage hospital operations." Rather,
CMHD is the hospital's governing body and is exclusively

- 531 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

responsible for employing providers and operating hospital facilities. Aside from its servicing the debt which facilitated the hospital's construction and subsequent purchases of equipment, we are hard pressed to say that CMH, Inc., plays any role in hospital operations. Under these circumstances, the evidence does not support the argument that CMH, Inc., and CMHD engaged in contribution evidencing partnership status.

Finally, with regard to co-ownership of property, appellants emphasize that CMH, Inc., "is the owner of the hospital property and is entitled to all the hospital revenue." *Id.* First, we acknowledge that CMH, Inc., is the sole owner of hospital property that serves as collateral for the debt it services on CMHD's behalf. CMHD then leases that property for its exclusive use in operation of the hospital. While it is not entirely clear where appellants find support for the latter half of their statement, it appears they cite a provision in the 1992 lease which provides that "[a]ll reserve, depreciation, debt payment and surplus funds shall be transferred to [CMH, Inc.,] on a monthly basis in addition to the monthly rental provided for herein, which funds shall be maintained by [CMH, Inc.,] for the purpose of debt retirement." Whatever the import of this provision when it was written, the record is clear that CMH, Inc., receives monthly rental payments in amounts necessary to service the outstanding obligations on CMHD's debt. Neither the landlord-tenant relationship between CMH, Inc., and CMHD nor the rental payments related thereto amount to joint ownership of property evidencing partnership status.

We conclude the record does not support appellants' contention that Community Memorial Hospital operated as a partnership between CMH, Inc., and CMHD. While there is certainly an "association" between the two entities, we cannot say the two entities carry on as co-owners of the hospital business for profit. At no point did CMH, Inc., exercise meaningful control over the day-to-day operations at Community Memorial Hospital. Rather, CMH, Inc., engaged in the limited business of servicing CMHD's privately held debt. Moreover, CMH,

- 532 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

Inc., was at all times subject to substantial oversight from CMHD itself. CMH, Inc.'s own bylaws precluded its board of directors from taking certain major actions without CMHD's approval, and CMHD was entitled to remove CMH, Inc.'s directors with or without cause.

[3,4] We turn then to appellants' next argument, that CMH, Inc., and CMHD operated as a joint venture. A joint venture or enterprise is in the nature of a partnership and exists when two or more persons contribute cash, labor, or property to a common fund with the intention of entering into some business or transaction for the purpose of making a profit to be shared in proportion to the respective contributions. *Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999). Each of the parties in a joint venture or enterprise must have equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other. *Id.*

We conclude the record does not support appellants' contention that CMH, Inc., and CMHD operated as a joint venture, for many of the same reasons we conclude the two entities did not operate as a partnership. Additionally, the record is clear that CMH, Inc., and CMHD did not jointly enter the hospital business for the purpose of making a profit to be shared proportionately. Rather, CMHD entered into the hospital business upon the assent of the voting public and the authorization by the Otoe County Board of Commissioners and CMH, Inc., entered into the "Medical Care Facility Leasing" business upon the direction of CMHD. Moreover, it is also clear that CMH, Inc., and CMHD do not have "an equal voice" in the performance of hospital business.

Altogether, it is clear from the record that CMHD, doing business as Community Memorial Hospital, was the entity with which Velma entered into a provider-patient relationship and was thus the entity which owed Velma a duty of care. Accordingly, we conclude the district court did not err in finding that CMH, Inc., owed no duty to Velma and that CMHD was the proper party defendant.

- 533 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

[5-7] As a political subdivision of the State of Nebraska, CMHD was entitled to timely notice of appellants' claims under the PSTCA. Section 13-905 of the PSTCA provides that "[a]ll tort claims . . . shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision." Section 13-919(1) provides that "[e]very claim against a political subdivision permitted under the [PSTCA] shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body." Furthermore, "all suits permitted by the act shall be forever barred unless begun within two years after such claim accrued." § 13-919(1). While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). The operation of the NHMLA does not excuse compliance with the requirement under the PSTCA that a claim be presented to the political subdivision prior to filing suit. See *Keller v. Tavarone, supra*. Accord *Jacobson v. Shresta*, 21 Neb. App. 102, 838 N.W.2d 19 (2013). For purposes of § 13-919(1), a cause of action accrues, thereby starting the period of limitations, when a potential plaintiff discovers, or in the exercise of reasonable diligence should discover, the political subdivision's negligence. *Polinski v. Omaha Pub. Power Dist.*, 251 Neb. 14, 554 N.W.2d 636 (1996).

In this case, appellants' claims accrued in February 2018, when Velma was injured. Thus, appellants were required by statute to serve CMHD with their written claims by February 2019. Only if appellants had satisfied this condition precedent would they have been entitled to file a lawsuit within the 2-year statutory limitation. Appellants filed their lawsuit in December 2019, which was within the 2-year statutory period. However, because appellants failed to comply with the notice requirement, their lawsuit was fatally premature and the deadline to serve CMHD with their claims had already been surpassed by more than 9 months. Thus, we agree with the

- 534 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

district court that allowing leave to amend the lawsuit would have been futile.

Much was made, both before the district court and now on appeal, of the legal relationship between CMH, Inc., and CMHD. However, the dispositive flaw in appellants' lawsuit remains that it was not preceded by timely notice to CMHD as required by the PSTCA. Appellants raise four arguments asserting that their lawsuit was filed in a timely manner.

[8-10] First, appellants argue that CMH, Inc., should be equitably estopped from relying on appellants' failure to give timely notice of their claims on the ground that "Community Memorial Hospital had actual notice of [appellants'] claims because it reported [Velma's] claim to . . . insurance." Brief for appellants at 18. The doctrine of equitable estoppel rests largely on the facts and circumstances of the particular case. *Gard v. City of Omaha*, 18 Neb. App. 504, 786 N.W.2d 688 (2010). The doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand. *Id.* In such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice. *Id.* Equitable estoppel is an affirmative defense and must be raised in the pleadings to be considered by a trial court and on appeal. *Id.*

[11] In this case, appellants' pleadings do not allege equitable estoppel. Moreover, at oral argument, counsel for appellants conceded that equitable estoppel was raised for the first time on appeal. In general, appellate courts do not consider arguments and theories raised for the first time on appeal. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021). Accordingly, we decline to address appellants' argument regarding equitable estoppel.

- 535 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

Appellants next argue that "Community Memorial Hospital qualified under the [NHMLA]" which served as Velma's "exclusive remedy against the hospital." Brief for appellants at 19. The NHMLA defines the term "health care provider," in pertinent part, as "a hospital." § 44-2803(4). Thus, we agree that Community Memorial Hospital qualified under the NHMLA, but the persistent problem in this case is that CMH, Inc., is a separate legal entity from CMHD, the latter of which is the governing body of the hospital. Accordingly, while the hospital itself certainly qualified under the NHMLA, CMH, Inc., did not.

[12] Moreover, as discussed above, the Nebraska Supreme Court has made clear that operation of the NHMLA does not excuse compliance with the notice requirements of the PSTCA. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). Appellants acknowledge the cases discussing this rule but argue that "these findings should be reversed." Brief for appellants at 19. However, until such time as those cases are reversed, we are bound to follow them and appellants' argument under the NHMLA is without merit. See *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995) (Nebraska Court of Appeals does not have authority to reverse holdings of the Nebraska Supreme Court).

Appellants next argue that the time to file their claim should have been extended under § 13-919(2). However, at oral argument, counsel for appellants conceded that this argument was also raised for the first time on appeal. Thus, we decline to address appellants' argument under § 13-919(2). See *In re Estate of Graham, supra* (in general, appellate courts do not consider arguments and theories raised for first time on appeal).

[13-15] Finally, appellants argue their claims were timely filed under the "continuing treatment exception" to the occurrence rule found in § 44-2828. Under the occurrence rule, a professional malpractice action accrues and the statute of limitations begins to run when the allegedly wrongful act or

- 536 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
WEYERS v. COMMUNITY MEMORIAL HOSP.
Cite as 30 Neb. App. 520

omission occurs. *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). However, under the continuing treatment exception to the occurrence rule, the statute of limitations does not begin to run until the act complained of, and any resulting subsequent treatment therefor, is completed. See *id.* The continuous treatment doctrine applies either when there has been a misdiagnosis upon which incorrect treatment is given or when there has been a continuing course of negligent treatment. *Frezell v. Iwersen*, 231 Neb. 365, 436 N.W.2d 194 (1989). It does not apply where there have been only isolated acts of negligence. *Id.*

In this case, appellants argue that Velma underwent treatment for her injuries until spring 2019, such that the statute of limitations should not have begun to run until then. However, appellants do not allege any negligence aside from that related to Velma's initial fall in February 2018. Thus, the continuing treatment exception does not apply to the circumstances of this case and appellants' argument to the contrary is without merit.

Because appellants failed to file timely notice of their claims with CMHD, their claims are barred and the district court did not err in granting CMH, Inc.'s motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we conclude the district court did not err in granting CMH, Inc.'s motion for summary judgment.

AFFIRMED.