RIEDA OURADA, APPELLANT AND CROSS-APPELLEE, V. ROBERT COCHRAN II, M.D., AND NEBRASKA METHODIST HOSPITAL, APPELLEES AND CROSS-APPELLANTS.

449 N.W.2d 211

Filed December 22, 1989.   No. 87-973.

Ronald J. Palagi, of The Law Offices of Ronald J. Palagi, P.C., and Martin E. Spellman, of Spellman Law Offices, for appellant.

Patrick G. Vipond, of Sodoro, Daly & Sodoro, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

WHITE, J.

Rieda Ourada, the plaintiff below, appeals from a jury verdict in favor of Robert Cochran II, M.D., and Nebraska Methodist Hospital, the defendants below, in her action for medical negligence.

Appellant Ourada assigns as error (1) that the trial court gave several instructions which were prejudicial to the appellant and misleading to the jury and (2) that the verdict is not supported by the evidence. The appellees have cross-appealed, claiming that the trial court erred in failing to find that the action was barred by the statute of limitations and in failing to dismiss for lack of subject matter jurisdiction. We reverse and remand on the basis that instruction No. 13 was prejudicially erroneous.

The record discloses the following facts. Ourada was injured in a sledding accident on December 2, 1983, in which she suffered a fracture of the first lumbar vertebra. She was taken to the emergency room at Nebraska Methodist Hospital and was subsequently admitted there as a patient under the care of Dr. Cochran. On December 9, an operation to decompress and stabilize Ourada's spine was performed by Drs. Cochran, Hacker, and Waters.

Appellant alleges negligent care, diagnosis, and treatment by the appellees from December 2, the time that appellant entered the emergency room, until the morning of December 9, the day on which the operation was performed. There is no allegation of negligence regarding the operation itself, nor regarding any time thereafter. Appellant alleges that as a result of appellees' negligence she developed permanent cauda equina syndrome, which causes her to suffer loss of bladder control, numbness, weakness in her legs, and sexual dysfunction.

We will first examine appellees' cross-appeal. Appellees were both subject to the provisions of the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 et seq. (Reissue 1988). The act provides that a medical review panel shall review all malpractice claims against those covered by the act in advance of filing such actions. However, § 44-2840(4) allows for waiver of the panel:

> The claimant may affirmatively waive his or her right to a panel review, and in such case the claimant may proceed to

file his or her action directly in court. If the claimant waives the panel review, the claimant shall serve a copy of the petition or complaint upon the director [of insurance] personally or by registered or certified mail at the time the action is filed in court.

Appellant chose to waive the panel and filed her petition with the court on December 6, 1985. A copy of the petition, postmarked December 10, 1985, was received by the Department of Insurance on December 11.

In medical malpractice cases a period of limitations or repose begins to run when the treatment rendered after and relating to the act or omission complained of is completed. *Barry v. Bohi*, 221 Neb. 651, 380 N.W.2d 249 (1986). Therefore, the statute of limitations began to run on December 9, 1983. Appellees admit this in their brief. Appellant filed her petition 3 days before the 2-year statute ran, thus conferring subject matter jurisdiction on the district court.

Appellees contend that appellant is barred by her failure to serve a copy of the petition on the director of the Department of Insurance by December 9 or at the exact time that the petition was filed. This argument fails because the provision which requires that a copy of the petition be sent to the Department of Insurance neither confers nor denies jurisdiction of the court. The district court gained subject matter jurisdiction of the case upon the filing of appellant's petition.

Furthermore, the provision in question is merely a notice requirement:

Section 5 is offered at the request of the Department of Insurance. It applies to situations where a claimant decides to waive his or right [sic] to a panel. Review of the amendment would require the claimant to notify the Department of the . . . the Director of the Department of Insurance at the time he or she files a lawsuit. It is necessary that the Department of Insurance is aware of all potential claims which might affect the excess liability fund.

Floor Debate, L.B. 692, Banking Committee, 88th Leg., 2d Sess. 8439-40 (Feb. 29, 1984) (remarks by Sen. John DeCamp, cosponsor of L.B. 692).

We hold that the department's receipt of appellant's petition 5 days after it was filed with the court substantially and sufficiently effectuated the purpose of giving the department notice of a potential claim which might affect the excess liability fund, and therefore jurisdiction of the court will not be denied on the issues presented in appellees' cross-appeal.

We now turn to appellant's assignment of error regarding jury instructions. Appellant claims that the decision in *Watson v. McNamara*, 229 Neb. 1, 424 N.W.2d 611 (1988), is controlling. We agree. Instruction No. 13 in this case is essentially the same as instruction No. 10 given in *Watson*, which was ruled prejudicially erroneous. Instruction No. 13 states:

> A physician who is a specialist is not bound to use any particular method of procedure; and if, among physicians of ordinary skill and learning in that specialty, more than one method of procedure is recognized as proper, it is not negligence for a physician to adopt any of such methods. The fact that some other method of procedure existed, or the fact that some other physician in that specialty testified in this case that he might or would have used or advised another or a different method, does not, standing alone, establish that the specialist used an improper procedure; nor would it be an act of negligence or impropriety for the specialist not to have adopted another method.

In this case, as in *Watson*, the testimony of appellant's experts, if believed, established a prima facie case of negligence. We stated in *Watson* that instruction No. 10 permitted the jury to infer that the plaintiff's experts' testimony, even if believed, did not establish negligence and was not enough to establish the plaintiff's case. We reiterate that statement here as it pertains to instruction No. 13, and hold that the instruction was prejudicial to the appellant and is grounds for reversal. The judgment is therefore reversed and the cause remanded for a new trial. We need not reach appellant's second assignment of error.

REVERSED AND REMANDED FOR A NEW TRIAL.