Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/31/2020 08:12 AM CDT

Richard K. Bonness, appellant, v.
Joel D. Armitage, M.D., appellee.
___ N.W.2d ___

Filed May 8, 2020.    No. S-19-393.

1. **Rules of the Supreme Court: Pleadings: Waiver: Appeal and Error.** When a question concerning the waiver of an affirmative defense involves the interpretation of rules of pleading, it is a question of law reviewed de novo.

2. **Limitations of Actions: Pleadings.** A challenge that a pleading is barred by the statute of limitations is a challenge that the pleading fails to allege sufficient facts to constitute a claim upon which relief can be granted.

3. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

4. **Appeal and Error.** As a general rule, a Nebraska appellate court does not consider an argument or theory raised for the first time on appeal.

5. **Waiver: Estoppel.** Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part.

6. **Limitations of Actions: Words and Phrases.** "Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress. It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed.

7. **Limitations of Actions: Malpractice: Words and Phrases.** In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action.

8. **Malpractice: Damages: Words and Phrases.** In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss. Legal injury is not damage; damage is the loss resulting from the misconduct.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed.

Patrick J. Cullan and Joseph P. Cullan, of Cullan & Cullan, L.L.C., for appellant.

David A. Blagg, Brien M. Welch, and Kathryn J. Cheatle, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Richard K. Bonness appeals the district court's dismissal of his medical malpractice action against Joel D. Armitage, M.D., on statute of limitations grounds. Bonness contends that Armitage waived the statute of limitations defense and that even if he did not, his complaint should not have been dismissed. We disagree and affirm the decision of the district court.

## BACKGROUND

*Commencement of Action and*
*Initial Procedural History.*

This case began on June 20, 2017, when Bonness filed his initial complaint against Armitage. The initial complaint generally alleged that Armitage had failed to timely diagnose Bonness with prostate cancer.

The attorney who filed the initial complaint on behalf of Bonness later moved to withdraw, and new counsel entered an appearance. The district court subsequently granted Bonness leave to file an amended complaint. Bonness did so in January 2018. The amended complaint contained additional factual

allegations, but also generally alleged that Armitage had failed to timely diagnose Bonness with prostate cancer. Armitage filed an answer later that month in which he denied negligence and also asserted that the claims alleged were barred by the professional negligence statute of limitations.

After the filing of the first amended complaint, the parties engaged in discovery for some time. In November 2018, Bonness filed a motion for leave to file a second amended complaint. In the motion, he asserted that the proposed second amended complaint would reflect new information learned during discovery. Armitage did not object to the motion for leave to file a second amended complaint. The district court granted the motion, and Bonness filed the second amended complaint. Because the second amended complaint is the operative complaint for purposes of this appeal, we summarize its allegations in greater detail below.

*Second Amended Complaint.*

In the second amended complaint, Bonness alleged that he had a family history of prostate cancer and that his father had died of prostate cancer at the age of 68. Following his father's death in 1995 until 2010, Bonness underwent "Prostate-Specific Antigen" (PSA) tests several times while he was seen by physicians other than Armitage. According to the second amended complaint, a PSA test measures the level of PSA in the bloodstream and can serve as an early indicator of prostate cancer, because the level of PSA in the blood is often elevated in men with prostate cancer. In 2007, one of those other physicians referred Bonness to a urologist because of an elevated PSA test and a hardened area on his prostate. The urologist determined that there was no cancer.

In late 2010, Armitage became Bonness' physician. The second amended complaint alleged that "based on . . . Bonness' desire to do everything necessary to screen for prostate cancer," Bonness and Armitage "agreed to a health plan that entailed utilizing the most effective preventative cancer care for the early detection of prostate cancer." Armitage allegedly

told Bonness that he would implement the plan in accordance with protocols in place at a university medical center.

Bonness alleged that during his initial visit with Armitage, Bonness informed Armitage that Bonness had a family history of prostate cancer, that he had been taking the medication commonly known as Avodart for many years, that he had undergone PSA testing earlier in the year, and that his PSA at that time was 3.0 ng/mL. Armitage noted in his records that he would perform PSA testing on Bonness on a yearly basis, but would not perform the testing that day, because Bonness had already been tested that year. Armitage also continued to prescribe Avodart for Bonness.

Bonness alleged that at the time of his first appointment with Armitage, the federal Food and Drug Administration was warning physicians that if taken for more than 6 months, Avodart decreases an individual's PSA level by about 50 percent. According to the second amended complaint, Avodart's effect on PSA levels requires physicians to double the value of PSA levels for purposes of testing for the presence of prostate cancer. Accordingly, Bonness alleged that his PSA test of 3.0 ng/mL in 2010 should have been interpreted as 6.0 ng/mL. Bonness also alleged that a patient with an adjusted PSA value of 6.0 ng/mL should be referred to a urologist, presumably for further testing.

Bonness alleged that he relied on Armitage's representation that there was no need to perform additional PSA testing in 2010. Bonness further alleged that Armitage affirmatively represented to him in 2011 that PSA testing was not immediately necessary and that he relied on that representation. Bonness also alleged that in 2013, Armitage affirmatively represented to him that PSA testing was "deemed unreliable" and that it was not necessary to perform the test and that Bonness relied on those representations as well. Bonness alleged that he specifically inquired of Armitage whether PSA testing should be performed in 2010, 2011, and 2013.

Armitage later claimed that Bonness refused to undergo PSA testing in 2010, 2011, and 2013, but Bonness denied refusing and also alleged that Armitage should have known that he desired testing. He asserted that Armitage should have known he wished to be tested based on Bonness' family history of prostate cancer, the death of his father from prostate cancer, Bonness' concerns regarding friends who had been diagnosed with prostate cancer, his "repeated, express concerns about the risk to himself of having prostate cancer," and his "expressed willingness to do, or have done, whatever was necessary" to detect and treat prostate cancer.

Bonness alleged that in 2014, Armitage reversed course and affirmatively represented to him that PSA testing was now warranted. Bonness then underwent PSA testing. His PSA level was over 5.0 ng/mL, a level the second amended complaint characterized as "elevated." In 2015, Bonness underwent additional PSA testing and his PSA level was more than 6.0 ng/mL, a level the second amended complaint also characterized as "elevated." Bonness alleged that as a result of his elevated PSA levels, he underwent a prostate biopsy on January 9, 2015, which revealed the presence of cancer. In March 2015, Bonness then underwent a radical prostatectomy. Bonness alleged that after this procedure, he was told he was cancer free.

Bonness had additional PSA testing performed in April, May, and June 2016. Based on PSA testing performed in June 2016, Bonness was informed that his prostate cancer had recurred.

Based on these facts, Bonness alleged that Armitage was liable for negligence and for failure to obtain his informed consent to the treatment provided. With respect to his claim of negligence, Bonness alleged that the most effective preventative cancer care for prostate cancer would have included PSA testing in 2010, 2011, and 2013. He also alleged that because he was taking Avodart, his PSA test results in 2010 should have been doubled. He contended that given his PSA test results in 2010 and Bonness' family history of prostate cancer,

Armitage should have immediately referred him to a urologist. With respect to his claim of failure to obtain informed consent, he also alleged that Armitage should have provided him with information regarding the risks to Bonness of not having regular PSA tests in light of his family history of prostate cancer and the effect of Avodart on PSA test results.

Bonness alleged that it was only after the recurrence of his prostate cancer that he learned of facts that led to the discovery of his claims against Armitage.

*Dismissal by District Court.*

Armitage moved to dismiss the second amended complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6). The motion to dismiss asserted that the second amended complaint failed to allege facts indicating that it was timely filed.

Following a hearing, the district court entered a written order granting the motion to dismiss. The district court found that Bonness' claims were barred by the 2-year professional negligence statute of limitations set forth in Neb. Rev. Stat. § 25-222 (Reissue 2016). The district court concluded that Armitage's allegedly deficient treatment would have been known to Bonness by January 2015, when his prostate cancer requiring surgical intervention was first discovered. The district court wrote that by that date, Bonness would have known that Armitage had been unable to prevent Bonness from getting prostate cancer. Based on its determination that Bonness discovered his claims in January 2015, the district court found that he did not timely file his action.

Bonness timely appealed.

## ASSIGNMENTS OF ERROR

Bonness assigns two errors on appeal, both concerning the district court's dismissal of his suit on statute of limitations grounds. According to Bonness, the district court erred by dismissing the suit, (1) because Armitage waived the statute of limitations defense and (2) because Bonness did not discover his claims until his cancer recurred in June 2016.

## STANDARD OF REVIEW

[1] When a question concerning the waiver of an affirmative defense involves the interpretation of rules of pleading, it is a question of law reviewed de novo. See *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

[2,3] A challenge that a pleading is barred by the statute of limitations is a challenge that the pleading fails to allege sufficient facts to constitute a claim upon which relief can be granted. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006). A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019).

## ANALYSIS

*Did Armitage Waive Statute*
*of Limitations Defense?*

[4] We begin our analysis by considering Bonness' argument that Armitage waived the statute of limitations defense. Initially, we note that nothing in our record indicates that Bonness raised this argument in the trial court, and it is thus not clear that it is properly preserved for appellate review. See, e.g., *State v. Kruse*, 303 Neb. 799, 808, 931 N.W.2d 148, 155 (2019) ("[a]s a general rule, an appellate court will not consider an argument or theory that is raised for the first time on appeal"). But even assuming the argument is properly before us, we find that it lacks merit for reasons we will explain.

A party can waive a statute of limitations defense. See, e.g., *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015). For example, a party waives a statute of limitations defense if it fails to plead it. See *id.* In this case, however, Bonness concedes that Armitage did not fail to plead a statute of limitations defense. Armitage asserted in his answer to the first amended complaint that Bonness' claims were barred by the statute of limitations. And although Armitage did not file an

answer to the second amended complaint, he filed a motion to dismiss on statute of limitations grounds.

Unable to liken this case to those in which a party fails to plead a statute of limitations defense and thereby waives it, Bonness argues that Armitage waived the statute of limitations defense by not immediately moving to dismiss the first amended complaint. According to Bonness, as soon as the first amended complaint was filed, Armitage had all of the information necessary to file a motion to dismiss on statute of limitations grounds but instead engaged in discovery for several months. This, Bonness contends, led him to believe that Armitage was defending the case solely on its merits and thus amounts to a waiver of the defense.

[5] Bonness acknowledges that he is unable to direct us to any cases in which we or another court has held that a party waived a statute of limitations defense by not immediately filing a motion to dismiss on statute of limitations grounds. Instead, Bonness relies on cases in which we have discussed waiver in a general sense and said that "[o]rdinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part." See, e.g., *Eagle Partners v. Rook*, 301 Neb. 947, 959, 921 N.W.2d 98, 108 (2018). Bonness asserts that Armitage's engaging in discovery after the first amended complaint was filed qualifies as a waiver under that standard.

We find Bonness' contention that Armitage waived the statute of limitations defense unsound. As we noted in recounting the standards of review applicable to this appeal, a challenge to a pleading on statute of limitations grounds is a challenge that the complaint fails to state a claim upon which relief can be granted. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006). This is relevant because our rules of pleading in Nebraska state that "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under § 6-1107(a), or by motion

for judgment on the pleadings, or at the trial on the merits."
§ 6-1112(h)(2). Our rules of pleading thus make clear that a
party does not waive the right to contend that a complaint fails
to state a claim upon which relief can be granted by not filing
a motion under § 6-1112(b)(6). Rather, the defense is preserved
*through trial*. Accordingly, Armitage's decision not to file a
motion to dismiss the first amended complaint could not have
amounted to an act showing an intention to waive the statute of
limitations defense.

Neither could it amount to an estoppel. Bonness' estop-
pel theory is that he was led to believe that Armitage would
not seek to dismiss on statute of limitations grounds when he
did not immediately move to dismiss. For reasons we have
explained, however, Bonness could not reasonably conclude
from Armitage's choice to engage in discovery that Armitage
would not later seek to contend that the pleading failed to show
it was filed in accordance with the statute of limitations. We
see no basis to find that Armitage waived the statute of limita-
tions defense.

*Was Dismissal on Statute of
Limitations Grounds Proper?*

Having found that Armitage did not waive the statute of lim-
itations defense, we turn to Bonness' contention that the district
court erred by dismissing the case on statute of limitations
grounds. As we have discussed, a defendant may, as Armitage
did here, raise the statute of limitations as part of a motion to
dismiss for failure to state a claim upon which relief can be
granted. If such a motion is made but the complaint does not
disclose on its face that it is barred by the statute of limitations,
dismissal is improper. See *Lindner v. Kindig*, 285 Neb. 386,
826 N.W.2d 868 (2013). However, if the face of the complaint
does show that the cause of action is time barred and the plain-
tiff does not allege facts to avoid the bar of the statute of limi-
tations, dismissal is proper. See *Chafin v. Wisconsin Province
Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018). The

task before us is thus to review the second amended complaint and determine whether, accepting the factual allegations therein as true, it shows that the cause of action is barred by the applicable statute of limitations. For the reasons discussed below, we conclude that it does.

There appears to be some disagreement between the parties as to whether the applicable statute of limitations is the professional negligence statute of limitations set forth in § 25-222 or the statute of limitations in the Nebraska Hospital-Medical Liability Act set forth in Neb. Rev. Stat. § 44-2828 (Reissue 2010). The parties agree, however, that those statutes of limitations are identical as they relate to this case. Accordingly, we will consider the case under § 25-222, which provides:

Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

Under the statute, an action must be commenced within 2 years of the date the limitations period began to run unless the action was not or could not reasonably be discovered within that 2-year period, in which case, it must be commenced within 1 year after it is discovered or should be discovered.

See *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). As we will explain, the parties disagree in this case, both as to when the statute of limitations began to run and when Bonness discovered or reasonably could have discovered his claims against Armitage.

Bonness argues that Armitage committed several isolated acts of negligence and that a separate statute of limitations period began to run upon each such act. Specifically, Bonness contends that Armitage was negligent in 2010, 2011, and 2013, when he saw Bonness, but did not perform PSA testing, did not properly interpret Bonness' earlier PSA test results, and did not refer him to a urologist. Bonness acknowledges that under his theory, the 2-year statute of limitations would have expired as to his claims unless § 25-222's discovery exception applies. But Bonness argues the discovery exception does apply. He contends that he did not discover and could not reasonably have discovered his claims until he learned his prostate cancer had recurred on June 24, 2016. He thus argues that he timely filed this action by filing it within 1 year of that date.

Armitage disagrees with Bonness, as to both when the statute of limitations began to run and when he could have reasonably discovered his claims. Armitage argues that under the continuing treatment doctrine, see, e.g., *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006), the statute of limitations did not begin to run on Bonness' claims until January 2015, when the professional relationship between Bonness and Armitage concluded. Based on his contention that the statute of limitations began to run in January 2015, Armitage asserts that even if Bonness is correct that he could not reasonably have discovered his claims until June 2016, his claims are nonetheless barred, because the 1-year discovery extension does not apply if a plaintiff discovered or reasonably could have discovered his or her claims prior to the expiration of the 2-year statute of limitations. See, e.g., *Egan v. Stoler*, 265 Neb. 1, 653 N.W.2d 855 (2002). Alternatively, Armitage argues that the district

court was correct to conclude that based on the facts alleged in the operative complaint, Bonness discovered or reasonably could have discovered his claims in January 2015, and that thus, his claims are barred even if the statute of limitations began to run as early as Bonness contends.

[6-8] We will begin our analysis by considering whether the district court was correct to conclude that under the facts alleged in the operative complaint, Bonness discovered or reasonably could have discovered his claims in January 2015, when he first learned of the presence of prostate cancer. Several principles govern when a party discovers a claim for statute of limitations purposes. "Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress. *Guinn v. Murray, supra*. It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed. *Id.* In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action. *Id.* In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss. *Id.* Legal injury is not damage; damage is the loss resulting from the misconduct. *Id.*

Given these governing principles, we must consider what Bonness knew in January 2015 and whether a reasonable person in his position with that knowledge would have pursued an inquiry that would have led to knowledge of facts constituting the basis of his claims. The first and most obvious fact that Bonness knew at that time was that he had been diagnosed with prostate cancer. The district court seemed to conclude that Bonness had discovery of his claims based on his diagnosis alone. It reasoned that as soon as Bonness knew that he had prostate cancer, he would have known that "the treatment

provided by [Armitage] had not been effective in precluding [Bonness'] development of prostate cancer."

Although this statement of the district court is unquestionably true, we find it does not shed much light on the question at hand. Bonness does not allege that Armitage was negligent because he failed to prevent prostate cancer; he alleges that Armitage was negligent because he should have detected prostate cancer earlier. It is not so clear to us that based on a diagnosis of a condition alone, a patient is on inquiry notice of a claim that his or her physician should have diagnosed the condition earlier. We need not, however, decide whether Bonness discovered his claims against Armitage based on a diagnosis alone. As we will discuss below, the second amended complaint disclosed that at the time of his diagnosis, Bonness was aware of other information relevant to the discovery of his claims.

At the time he was diagnosed with cancer in January 2015, Bonness not only knew that he had been diagnosed, he also knew what Armitage had done and not done with respect to testing for prostate cancer before that diagnosis. As noted above, Bonness alleged that before Armitage became his doctor in 2010, he had undergone PSA testing for several years at the direction of other physicians and, on one occasion, was referred to a urologist for an elevated PSA result. Bonness alleged Armitage did not direct PSA testing for several years and represented to him in those years that PSA testing was not immediately necessary and that it was "deemed unreliable." Bonness also alleged, however, that elevated results on PSA testing ordered by Armitage in 2014 and 2015 led to the referral of Bonness to a urologist in early 2015 and his prostate cancer diagnosis. By the time of his diagnosis, then, Bonness would have known his diagnosis occurred as a result of elevated levels on a test that he had previously received regularly at the direction of other physicians, but that Armitage had declined to perform for several years and had claimed was unreliable.

We also note that the second amended complaint contains several other allegations regarding Bonness that suggest a person in his position would have questioned Armitage's detection efforts as soon as a diagnosis was made. As noted above, Bonness alleged that because members of his family and friends had been diagnosed with prostate cancer, Bonness repeatedly expressed concerns to Armitage about prostate cancer and made it clear that he wanted to do whatever was necessary to detect it. In addition, in the years in which Armitage did not order PSA testing, Bonness inquired about whether testing should be performed. In our view, once Bonness was diagnosed with cancer, a reasonable person in his position would have known of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action.

We are not persuaded by Bonness' argument that the fact that he was told he was cancer free following surgery in March 2015 is relevant to the discovery analysis. The fact that Bonness was told the cancer had been removed following surgery may have affected the extent of damages available for Armitage's alleged negligence in failing to detect prostate cancer. The focus, however, in deciding when a plaintiff discovered a cause of action for statute of limitations purposes is when the plaintiff knows of the existence of an injury. See *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). Injury, for these purposes, is the wrongful act or omission which causes the loss, not damage. See *id.* One need not know the extent of his or her damages to have discovery. See *Gering - Ft. Laramie Irr. Dist. v. Baker*, 259 Neb. 840, 612 N.W.2d 897 (2000).

Because we find that the face of the second amended complaint shows that Bonness discovered his claims against Armitage upon learning of his prostate cancer diagnosis in January 2015, it is not necessary for us to pinpoint exactly when the statute of limitations period began to run. Whether the statute of limitations began running in January 2015, as

Armitage contends, or earlier, as Bonness claims, the action was not commenced within 2 years of accrual or within 1 year of discovery.

## CONCLUSION

Because the face of the complaint shows that the action is barred by the statute of limitations, the district court did not err in granting Armitage's motion to dismiss.

AFFIRMED.

MILLER-LERMAN, J., not participating.