Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/15/2022 08:07 AM CDT

Lori J. Bogue and Robert F. Bogue,
appellants, v. Christopher C.
Gillis, appellee.

___ N.W.2d ___

Filed April 22, 2022.    No. S-21-610.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a
   lower court's grant of summary judgment if the pleadings and admitted
   evidence show that there is no genuine issue as to any material facts or
   as to the ultimate inferences that may be drawn from the facts and that
   the moving party is entitled to judgment as a matter of law.
2. ____: ____. An appellate court reviews the district court's grant of sum-
   mary judgment de novo, viewing the record in the light most favorable
   to the nonmoving party and drawing all reasonable inferences in that
   party's favor.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a question
   of law that an appellate court resolves independently of the trial court.
4. **Public Policy.** While the doctrine of stare decisis is entitled to great
   weight, it is grounded in the public policy that the law should be stable,
   fostering both equality and predictability of treatment.
5. **Appeal and Error.** Remaining true to an intrinsically sounder doctrine
   better serves the values of stare decisis than following a more recently
   decided case inconsistent with the decisions that came before it.

Appeal from the District Court for Douglas County: Duane
C. Dougherty, Judge. Affirmed.

Robert T. Cannella and Gerald L. Friedrichsen, of Fitzgerald,
Schorr, Barmettler & Brennan, P.C., L.L.O., for appellants.

David A. Blagg and Brien M. Welch, of Cassem, Tierney,
Adams, Gotch & Douglas, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Lori J. Bogue and Robert F. Bogue filed a lawsuit against Christopher C. Gillis, alleging that as a result of Gillis' negligence during a surgical procedure, Lori suffered injuries. The Bogues now seek review of the district court's entry of summary judgment in favor of Gillis on statute of limitations grounds. The timeliness of the Bogues' lawsuit turns on whether the 2-year statute of limitations started to run on the date of the surgery or when Gillis' subsequent treatment of Lori concluded approximately 1 year later. We find the district court did not err in concluding that the statute of limitations started to run on the date of the surgery and therefore affirm its entry of summary judgment in favor of Gillis.

BACKGROUND

*Parties' Allegations.*

On January 17, 2017, Gillis performed a lumbar spine fusion on Lori in Omaha, Nebraska. Nearly 3 years later, on January 3, 2020, the Bogues filed a lawsuit against Gillis and other defendants. In the lawsuit, the Bogues alleged that during the surgery, Gillis negligently damaged Lori's ureter and that, consequently, one of her kidneys stopped functioning and had to be removed. The Bogues claimed that as a result of Gillis' negligence, Lori suffered physical pain and mental distress and Robert suffered a loss of consortium.

In an amended complaint, the Bogues later alleged that Gillis continued to treat Lori through at least January 18, 2018, when he determined that Lori had a psoas abscess that was in close proximity with "hardware" that was implanted as part of the spinal fusion procedure. That amended complaint alleged that because Gillis continued to treat Lori through January 2018, their initial complaint was timely filed.

Gillis alleged in his answer that the Bogues' malpractice claim against him was barred by the statute of limitations

set forth in the Nebraska Hospital-Medical Liability Act. See Neb. Rev. Stat. § 44-2828 (Reissue 2021).

*Summary Judgment Evidence.*

Gillis later filed a motion for summary judgment on statute of limitations grounds. At the summary judgment hearing, the district court received depositions of both Lori and Robert, Lori's medical records, and an affidavit from an expert witness retained by the Bogues.

Lori and Robert testified in their depositions that Lori began to notice a collection of fluid in her abdomen shortly after arriving home from the surgery. Lori's medical records showed that in the year following the surgery, she continued to have appointments with Gillis in which the fluid collection was addressed. A note describing an appointment with Gillis on November 9, 2017, stated that "[t]here appears to be a fluid collection in the left psoas and into the abdomen" and went on to state that "we will have to obtain the radiology report to further understand what this may entail." Another note describing an appointment with Gillis on January 19, 2018, observed that Lori presented "with [a] history of fluid collection" after her spine surgery "and then subsequent development of a psoas abscess which she continues to undergo drainage and antibiotic therapy for." The notes indicated that Gillis reviewed an MRI and observed that the fluid collection had made contact "with the interbody cages." He recommended another MRI to look for evidence of "hardware infection."

Lori and Robert testified that in February 2018, they learned that Lori had suffered an injury to her ureter. At that time, both Lori and Robert believed that Gillis had negligently injured Lori during the surgery in January 2017. Lori's left kidney was removed in March 2018.

The Bogues' expert opined by affidavit that Gillis had breached the standard of care during the surgery in various respects and that if Gillis had complied with the standard of care, Lori's ureter would not have been injured and she

would not have lost her kidney. The Bogues' expert also opined that Gillis' treatment of Lori after the surgery "was related to the surgical negligence."

*District Court Order.*

The district court granted Gillis' motion for summary judgment. It concluded that whether the Bogues' claim was governed by the general professional negligence statute of limitations set forth in Neb. Rev. Stat. § 25-222 (Reissue 2016) or the statute of limitations set forth in the Nebraska Hospital-Medical Liability Act, see § 44-2828, Gillis was entitled to summary judgment on statute of limitations grounds.

The district court rejected the Bogues' argument that under the continuous treatment doctrine, the statute of limitations did not begin to run until the conclusion of Gillis' treatment of Lori in January 2018. With respect to the continuous treatment doctrine, the district court quoted the following language from our opinion in *Frezell v. Iwersen*, 231 Neb. 365, 369, 436 N.W.2d 194, 198 (1989): "The continuous treatment doctrine applies when there has been either a misdiagnosis upon which incorrect treatment is given or when there has been a continuing course of negligent treatment. It does not apply where there have been only isolated acts of negligence." The district court observed that there was no evidence that Gillis misdiagnosed Lori or was negligent after the January 2017 surgery.

Because the district court concluded that under the undisputed facts in the record, the statute of limitations began to run as of the January 2017 surgery, it determined that the Bogues' January 2020 complaint was not timely filed and that Gillis was entitled to summary judgment.

The Bogues perfected an appeal of the district court's ruling and filed a petition to bypass the Nebraska Court of Appeals. We granted the petition to bypass.

All of the Bogues' claims against defendants other than Gillis either were dismissed by operation of law due to the Bogues' failure to serve, were voluntarily dismissed by the

Bogues, or were also resolved by summary judgment. At oral argument, counsel for the Bogues confirmed that they are appealing only the district court's entry of summary judgment in favor of Gillis.

## ASSIGNMENT OF ERROR

The Bogues assign several errors, but they can effectively be restated as a single contention that the district court erred by finding that their malpractice claim was barred by the statute of limitations.

## STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

[3] Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court. *Seivert v. Alli*, 309 Neb. 246, 959 N.W.2d 777 (2021).

## ANALYSIS

*What Statute of Limitations Applies?*

The sole issue presented in this appeal is whether the district court correctly granted summary judgment to Gillis on statute of limitations grounds. We first address which statute of limitations applies.

Gillis claims that because the Bogues alleged that he was covered by the Nebraska Hospital-Medical Liability Act, the statute of limitations set forth in § 44-2828 applies to the Bogues' claim, rather than the general professional negligence statute of limitations set forth in § 25-222. The Bogues do

not dispute that assertion, but it is ultimately of little consequence because both parties agree that those statutes of limitation are identical as they relate to this case. See *Giese v. Stice*, 252 Neb. 913, 919, 567 N.W.2d 156, 162 (1997) (observing that language of § 44-2828 and § 25-222 is "identical in all material respects"). We will thus analyze this case under § 44-2828, but in doing so, we will also consider prior cases interpreting and applying § 25-222.

Section 44-2828 provides:

Except as provided in section 25-213, any action to recover damages based on alleged malpractice or professional negligence or upon any alleged breach of warranty in rendering or failing to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failing to render professional services providing the basis for such action, except that if the cause of action is not discovered and could not be reasonably discovered within such two-year period, the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. In no event may any action be commenced to recover damages for malpractice or professional negligence or breach of warranty in rendering or failing to render professional services more than ten years after the date of rendering or failing to render such professional service which provides the basis for the cause of action.

Pursuant to this language, an action must be commenced within 2 years of the date the limitations period began to run unless the cause of action was not or could not reasonably be discovered within that 2-year period. See *Bonness v. Armitage*, 305 Neb. 747, 942 N.W.2d 238 (2020). The discovery exception is not at issue in this appeal. Instead, the question of whether the Bogues' claim was timely filed hinges entirely on when the 2-year statute of limitations began to run.

*Does Continuous Treatment Doctrine Apply?*

Upon first blush, the question of when the statute of limitations began to run might appear obvious. Section 44-2828 provides that the action "shall be commenced within two years [of] the alleged act or omission in rendering or failing to render professional services providing the basis for such action." We have recognized that such language provides for an "occurrence rule," whereby the statute of limitations begins to run upon the alleged act or omission causing injury. See, e.g., *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994) (interpreting § 44-2828); *Suzuki v. Holthaus*, 221 Neb. 72, 375 N.W.2d 126 (1985) (interpreting § 25-222). And there is no real dispute that the act or omission providing the basis for the Bogues' action against Gillis occurred during Lori's surgery in January 2017.

As it turns out, however, the statute of limitations issue in this case is not as simple as it may initially appear. It is complicated by our cases discussing and applying what we have referred to as the "continuous treatment doctrine." See, e.g., *Frezell v. Iwersen*, 231 Neb. 365, 369, 436 N.W.2d 194, 198 (1989). The Bogues, invoking some of those cases, argue that under the continuous treatment doctrine, the statute of limitations did not begin to run on their claim against Gillis until his treatment after Lori's surgery concluded in mid-January 2018. The Bogues acknowledge that they are not alleging and have no evidence that Gillis acted negligently after the January 2017 surgery, but they contend that is immaterial. As they understand the continuous treatment doctrine, so long as Gillis' subsequent treatment was related to the initial negligence, the doctrine applies and the statute of limitations did not begin to run until that related treatment concluded.

Gillis disagrees. While he concedes the Bogues have offered expert testimony that Gillis breached the standard of care during surgery and that his treatment of Lori through January 2018 was related to that alleged negligence, he argues that this subsequent treatment does not affect when the statute of

limitations began to run. According to Gillis, the continuous treatment doctrine applies only when there has been a misdiagnosis upon which incorrect treatment is subsequently given or a continuing course of negligent treatment. And because the evidence here would not permit an inference of either treatment provided pursuant to a misdiagnosis or a continuing course of negligent treatment, Gillis argues that the district court correctly determined that the statute of limitations began to run on the date of Gillis' alleged negligence in January 2017.

At this point, we will acknowledge that both the Bogues and Gillis can point to cases decided by this court that are supportive of their respective understandings of the continuous treatment doctrine. We discuss those cases in some detail below.

*Conflict Within Continuous*
*Treatment Doctrine Cases.*

Both parties agree that the origin of the continuous treatment doctrine in Nebraska can be traced to *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941), a decision issued by this court over 80 years ago. The *Williams* court was tasked with deciding whether the statute of limitations barred a medical malpractice lawsuit arising out of a doctor's misdiagnosis of a plaintiff's condition and subsequent treatment based on that misdiagnosis. The patient alleged that he first visited the doctor after suffering injuries to his back. The doctor diagnosed the patient with lumbago and proceeded to treat him accordingly for several months. When the plaintiff was later sent to a hospital, however, it was determined he actually had a fractured vertebra. As here, the timeliness of the lawsuit depended on when the governing statute of limitations began to run. If the statute of limitations began to run on the date of the initial misdiagnosis, the plaintiff's lawsuit was filed too late. If, on the other hand, the statute of limitations began to run when the doctor's treatment based on that misdiagnosis concluded several months later, it was timely filed. On appeal, the court sided

with the plaintiff and concluded that the statute of limitations began to run at the conclusion of the treatment.

In analyzing when the statute of limitations began to run, the *Williams* court primarily focused on when the doctor's breach of duty occurred. The court rejected the doctor's argument that "the faulty diagnosis, in and of itself, constituted the breach of duty." *Id.* at 661, 1 N.W.2d at 123. It explained that the doctor's duty was to diagnose the patient's injuries *and* to "treat them in the manner usually done by physicians in his locality." *Id.* at 662, 1 N.W.2d at 124. With that understanding in mind, the court concluded that the doctor continued to breach his duty to the patient for the entire time he was providing treatment based on a misdiagnosis. See *id.* ("[i]t was not the error in the diagnosis originally made by defendant but its adherence thereto and course of treatment that brought about the injuries").

Although much of the court's statute of limitations analysis in *Williams* was devoted to determining whether the doctor's breach of duty continued beyond the initial misdiagnosis, in a concluding paragraph, the court referred to opinions in which other courts had held that a medical malpractice statute of limitations began to run at the conclusion of a course of treatment and identified a rationale for those opinions:

> [I]t is just to the physician and surgeon that he may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and treatment necessary and to correct the ordinary and usual mistakes incident to even skilled surgery. The doctrine announced in the foregoing cases is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein malpractice,

the statute of limitations should begin to run when the treatment ceased.

104 Neb. at 662-63, 1 N.W.2d at 124.

The statute of limitations that governed medical malpractice actions at the time *Williams* was decided provided that they must be brought within 2 years after the cause of action accrued. See, Comp. Stat. § 20-201 (1929); Comp. Stat. § 20-208 (Supp. 1939). Over three decades later, §§ 44-2828 and 25-222 were enacted. See, 1976 Neb. Laws, L.B. 434, § 28; 1972 Neb. Laws, L.B. 1132, § 1. As we have noted, these statutes of limitation provide that a 2-year limitations period begins to run upon the "act or omission" providing the basis for the action unless the case falls within an exception set forth in the statute for claims that are not and cannot be discovered within that period.

In the years that followed the enactment of §§ 44-2828 and 25-222, two different lines of authority emerged from this court as to how continuous treatment can affect the point at which the statute of limitations begins to run in a medical malpractice action. One line of authority followed the initial inquiry in *Williams* and centered on whether the defendant's breach of duty continued through the course of the treatment. Under this line of authority, only if the defendant's negligence continued through the course of treatment would the statute of limitations begin to run when the treatment ceased.

The other line of authority that emerged focused on the concluding paragraph of *Williams* quoted above, particularly its emphasis on providing physicians an opportunity to correct mistakes made during treatment. This line of authority held that the statute of limitations would begin to run when any treatment related to the alleged negligence ceased, even if that subsequent treatment was not itself alleged to be negligent.

An example of the former approach is found in *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985). In that case, a plaintiff's malpractice claim was based on x-ray treatments his doctor provided to treat his allergies. The doctor later provided other forms of treatment for the same condition, and the

patient contended that the statute of limitations began to run when those other treatments ceased. The plaintiff did not, however, contend that the doctor was negligent in providing those subsequent treatments. In the course of rejecting the plaintiff's argument, the *Tiwald* court noted the plaintiff's reliance on *Williams*, but explained that in *Williams*,

> there was a continuing course of negligent treatment, as opposed to single or isolated acts of negligence. The malpractice in *Williams* can be characterized as a continuing tort because the physician persisted in continuing and repeating the wrongful treatment because of the incorrect diagnosis. Thus, the statute of limitations did not begin to run until the continuing negligent treatment which was the basis of the plaintiff's claim had ended.

221 Neb. at 551, 378 N.W.2d at 673.

The court concluded that because the plaintiff alleged only isolated acts of negligence, the statute of limitations began to run after the completion of the x-ray treatments. Later, in *Ames v. Hehner*, 231 Neb. 152, 435 N.W.2d 869 (1989), the court relied on the above-quoted language from *Tiwald* and also focused on whether there was continuing negligent treatment.

In *Frezell v. Iwersen*, 231 Neb. 365, 436 N.W.2d 194 (1989), the court again focused on whether the defendant provided continuing negligent treatment. In *Frezell*, the plaintiff's claim was based on negligence during surgery, but the defendant continued to treat complications arising from that surgery for several years thereafter. Again, the issue was when the statute of limitations began to run. This court rejected the plaintiff's argument that the limitations period began to run after the defendant stopped treating the complications. It stated that "[t]he continuous treatment doctrine applies when there has been either a misdiagnosis upon which incorrect treatment is given or when there has been a continuing course of negligent treatment. It does not apply where there have been only isolated acts of negligence." *Id.* at 369, 436 N.W.2d at 198.

Because the plaintiff did not allege that the treatment after the surgery was negligent, the court held that the statute of limitations began to run on the date of the surgery. See, also, *Weyers v. Community Memorial Hosp.*, 30 Neb. App. 520, 971 N.W.2d 155 (2022) (concluding continuous treatment doctrine did not apply because treatment following alleged negligence was not also alleged to be negligent).

But, as noted above, this court has not been consistent. In a number of other cases, we stated that the continuous treatment doctrine had been "merged" into the occurrence rule such that the period of limitations or repose "begins to run when the treatment rendered after and relating to the allegedly wrongful act or omission is completed." *Healy v. Langdon*, 245 Neb. 1, 5, 511 N.W.2d 498, 501 (1994). See, also, *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006); *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001); *Weaver v. Cheung*, 254 Neb. 349, 576 N.W.2d 773 (1998); *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996); *Ourada v. Cochran*, 234 Neb. 63, 449 N.W.2d 211 (1989); *Barry v. Bohi*, 221 Neb. 651, 380 N.W.2d 249 (1986). These cases make no mention of a requirement that the treatment rendered after and relating to an allegedly wrongful act or omission must also be negligent.

The clearest application of this more expansive version of the continuous treatment doctrine and the case most heavily relied upon by the Bogues is *Healy, supra*. In *Healy*, the plaintiff alleged that her doctor failed to obtain her informed consent to provide chemotherapy treatments and that when she subsequently developed complications, the doctor continued to treat her complications. The court concluded that because the treatment for the complications was related to the treatment for which the doctor failed to obtain informed consent, the statute of limitations began to run at the conclusion of the treatment for the complications. No suggestion was made, however, that the treatment for the complications was negligent. In *Healy*, the court attempted to harmonize prior cases discussing the continuous treatment doctrine but did not cite

*Frezell v. Iwersen*, 231 Neb. 365, 436 N.W.2d 194 (1989), which was decided 5 years before.

The conflict within our continuous treatment cases has not gone unnoticed. In *Joyner v. Forney*, 78 F.3d 1339 (8th Cir. 1996), a party appealed a federal district court's entry of summary judgment on statute of limitations grounds in a medical malpractice action governed by Nebraska law. In that appeal, the U.S. Court of Appeals for the Eighth Circuit rejected the plaintiff's argument that his claim was timely due to the application of the continuous treatment doctrine. It relied on *Frezell, supra*, and explained that the continuous treatment doctrine did not apply in the way the plaintiff contended, because there was no evidence that the defendants' postoperative treatment was negligent. When the plaintiff later filed a motion for rehearing contending that the continuous treatment doctrine can delay the commencement of the limitations period even if related treatment following the alleged negligent act or omission is not itself negligent, the Eighth Circuit observed that it was "hard to reconcile this apparent disparity among the Nebraska cases." *Joyner*, 78 F.3d at 1344.

In our view, the Eighth Circuit was being polite. The disparity in our continuous treatment doctrine cases is more than apparent, and we do not believe it can be coherently reconciled. In the line of cases that includes *Frezell, supra*, we have held that the continuous treatment doctrine applies only if there has been a continuing course of *negligent* treatment. In the line of cases that includes *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994), we have held that the doctrine applies if there is a continuing course of treatment following and related to the alleged negligence, without any requirement that the subsequent treatment be negligent.

This case does not allow us to whistle past those divergent lines of precedent. Gillis would be entitled to summary judgment if *Frezell* controls, but would not if *Healy* controls. As a result, we must decide which line of cases to follow and which line of cases to overrule. We turn to that question now.

*Resolution of Conflict.*

[4,5] When called to decide whether precedent should be followed or overruled, courts often consider what one member of the U.S. Supreme Court recently described as "precedents on precedent." *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1412, 206 L. Ed. 2d 583 (2020) (Kavanaugh, J., concurring). "Precedents on precedent" are opinions in which courts have set forth principles to be considered in deciding whether prior cases should be overruled. This court has identified several such principles, and we find some of them especially relevant to this case. We have said, for example, that while the doctrine of stare decisis is entitled to great weight, it is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment. *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). We have also recognized that overruling precedent is justified when the purpose is to eliminate inconsistency. *Id.* And we have said that remaining true to an intrinsically sounder doctrine better serves the values of stare decisis than following a more recently decided case inconsistent with the decisions that came before it. *Id.*

Applying those principles here, we find it appropriate to consider whether one line of our inconsistent continuous treatment doctrine cases is intrinsically sounder than the other. We believe consideration of that question must begin with the statutory language of § 44-2828. It is, after all, a *statute* of limitations that determines whether the Bogues' claim was timely filed.

As discussed above, § 44-2828 plainly provides for an occurrence rule whereby the limitations period begins to run upon "the alleged act or omission . . . providing the basis for [the] action," unless the specifically described discovery exception applies. We see no way in which the occurrence rule provided for in the text of § 44-2828 can be squared with the version of the continuous treatment doctrine preferred by the Bogues and applied in the line of cases that includes

*Healy, supra*. Under that version of the continuous treatment doctrine, the limitations period can begin to run long after the date of the alleged act or omission that provides the basis for the action, even when the discovery exception does not apply. For example, in this case, the Bogues argue that the statute of limitations began to run after Lori's appointment with Gillis in mid-January 2018, even though they concede that the only act or omission providing the basis for her action occurred during the surgery in January 2017 and that the discovery exception does not apply.

Not only does § 44-2828's discovery exception not apply in this case, its existence makes the Bogues' preferred version of the continuous treatment doctrine especially difficult to justify. Ordinarily, when a statute specifically provides for exceptions, we will not recognize others judicially. See *In re Guardianship of Eliza W.*, 304 Neb. 995, 1006, 938 N.W.2d 307, 315 (2020) ("[o]ne of our rules of statutory interpretation provides that when a statute specifically provides for exceptions, items not excluded are covered by the statute"). See, also, *Dondlinger v. Nelson*, 305 Neb. 894, 942 N.W.2d 772 (2020) (Papik, J., concurring) (contending that recognition of continuous representation doctrine in context of § 25-222 is contrary to this rule of statutory interpretation). Here, however, the version of the continuous treatment doctrine applied in *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994), could exist only as a judicially recognized exception to the occurrence rule despite the presence of the statutorily authorized discovery exception.

In contrast to the line of cases including *Healy*, the line of cases including *Frezell v. Iwerson*, 231 Neb. 365, 436 N.W.2d 194 (1989), can be more easily reconciled with the text of § 44-2828. Again, that line of cases holds that the limitations period begins to run at the conclusion of a course of treatment only if there has been treatment pursuant to a misdiagnosis or a continuing course of negligent treatment. When there has been treatment provided pursuant to a misdiagnosis or a continuing course of negligent treatment, the entire course of treatment

can be understood as the "act or omission . . . providing the basis for [the] action." § 44-2828. See, also, *Williams v. Elias*, 140 Neb. 656, 662, 1 N.W.2d 121, 124 (1941) ("[i]t was not the error in the diagnosis originally made by defendant but its adherence thereto and course of treatment that brought about the injuries"). Other courts have likewise concluded that while an expansive continuous treatment doctrine like that expressed in *Healy* is inconsistent with statutes of limitations similar to § 44-2828, the same problem is not created by a rule in which the limitations period begins at the conclusion of a continuous course of negligent treatment. See, e.g, *Cunningham v. Huffman*, 154 Ill. 2d 398, 609 N.E.2d 321, 182 Ill. Dec. 18 (1993); *Ewing v. Beck*, 520 A.2d 653 (Del. 1987).

At oral argument, counsel for the Bogues candidly acknowledged that the version of the continuous treatment doctrine preferred by the Bogues and exemplified by *Healy, supra*, is not "literally" compatible with the statutory language of § 44-2828. Counsel nonetheless argued that we should follow that line of cases, invoking the doctrine of legislative acquiescence and policy considerations.

We are not persuaded that the doctrine of legislative acquiescence assists the Bogues. We have said that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). We have refused to apply the doctrine, however, when "there has been no interpretation of any statute in which the Legislature could be characterized to have acquiesced." *Id.* at 465, 894 N.W.2d at 302. That is the case here. While there are cases in which this court applied the expanded version of the continuous treatment doctrine preferred by the Bogues, those cases did not conclude that the doctrine applied as a result of the language of § 44-2828 or § 25-222. And, even setting that issue aside, the Bogues are unable to explain how we would go about determining which of our conflicting lines

of continuous treatment doctrine cases the Legislature has acquiesced in.

This leaves the Bogues' policy argument. They argue that the version of the continuous treatment doctrine exemplified by *Healy* provides physicians with a period of time in which the statute of limitations will not run when they can attempt to correct any mistakes. They point out that the concluding paragraph of *Williams, supra*, extolled the benefits of giving physicians such an opportunity.

We do not disagree with the Bogues that the version of the continuous treatment doctrine set forth in *Healy* is more consistent with a policy goal of providing doctors an opportunity to correct their mistakes before the statute of limitations starts to run. We disagree with the Bogues, however, to the extent they suggest that this court should have unilaterally departed from the governing statutory text in an effort to promote this policy goal. While a rational policy argument could be made for a rule that allows doctors a period of time to address complications caused by their alleged negligence before the statute of limitations begins to run, a rational policy argument could also be made for an occurrence rule with a discovery exception. Indeed, this court has previously observed that § 25-222 was enacted "to insure that actions based upon professional negligence would be brought shortly after the alleged negligence occurred or was discovered so that the professional could have a fair chance to defend on the merits and not find his defenses eroded by the lapse of time." *Swassing v. Baum*, 195 Neb. 651, 658, 240 N.W.2d 24, 28 (1976). We highlight these competing policy arguments not to choose one side or the other, but to observe that once the Legislature has enacted a statute, the resolution of those arguments is not our job. As we often say, "[i]t is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state." *Rogers v. Jack's Supper Club*, 304 Neb. 605, 614, 935 N.W.2d 754, 762 (2019).

As for the Bogues' contention that *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941), recognized the benefits of giving doctors an opportunity to attempt to correct their mistakes as a policy rationale for the continuous treatment doctrine, we do not believe that informs the question of when the statute of limitations begins to run under § 44-2828. Even assuming that this court determined in *Williams* that the then-governing statute of limitations should start to run at the conclusion of any treatment related to the alleged act or omission at issue regardless of whether that subsequent treatment was negligent, the statute of limitations that applied in *Williams* no longer applies today. The Legislature passed new statutes of limitations governing medical malpractice actions in the 1970s—§§ 44-2828 and 25-222. See, 1976 Neb. Laws, L.B. 434, § 28; 1972 Neb. Laws, L.B. 1132, § 1. The Legislature could have at that time incorporated a continuous treatment rule like the one the Bogues argue was adopted in *Williams*. As we have discussed, it did not.

Because we find it to be the analytically sounder rule, we reaffirm those cases holding that the continuous treatment doctrine applies only when there has been a misdiagnosis upon which incorrect treatment is given or when there has been some other continuing course of negligent treatment. We disapprove of *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994), and other cases to the extent they suggest that under the continuous treatment doctrine, the statute of limitations in a medical malpractice action starts to run upon the conclusion of any treatment related to the alleged act or omission forming the basis for the cause of action, even if that subsequent treatment is not alleged to be negligent. See, e.g., *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006); *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001); *Weaver v. Cheung*, 254 Neb. 349, 576 N.W.2d 773 (1998); *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996); *Ourada v. Cochran*, 234 Neb. 63, 449 N.W.2d 211 (1989); *Barry v. Bohi*, 221 Neb. 651,

380 N.W.2d 249 (1986); *Smith v. Dewey*, 214 Neb. 605, 335 N.W.2d 530 (1983).

*Application.*

Having rejected the version of the continuous treatment doctrine preferred by the Bogues, there is little more to say about this case. As we have noted, the act or omission that forms the basis for their action occurred during Lori's surgery in January 2017. There is no evidence from which it could be inferred that Gillis was negligent after that surgery. Accordingly, under the undisputed facts, the statute of limitations began to run in January 2017. The Bogues' January 2020 complaint was not timely filed, and Gillis was entitled to summary judgment.

## CONCLUSION

The district court did not err in granting Gillis summary judgment on statute of limitations grounds. Accordingly, we affirm.

AFFIRMED.